IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MADILYNN WASHINGTON, )
)
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 5:20-CV-294 (MTT)
)
UNITED STATES DEPARTMENT )
OF EDUCATION, )
)
)
Defendant. )
)

## ORDER

The United States Department of Education (the "Department") has moved to dismiss the Fair Credit Reporting Act ("FCRA") claims brought against it by Plaintiff Madilynn Washington. Because Congress has not clearly and unambiguously waived sovereign immunity for civil enforcement suits under the FCRA, the Department's motion (Doc. 19) is **GRANTED**.

## I. BACKGROUND

Washington alleges that the Department is reporting false information to her Equifax[1] credit file concerning a scheduled monthly payment. Specifically, Washington states the Department is "inaccurately reporting its tradeline … with an erroneous scheduled monthly payment of $50.00 on [her] Equifax credit disclosure." Doc. 1 ¶ 7.

---

[1] Equifax Information Services, LLC was a party to this lawsuit, but it has settled its dispute with Washington. Doc. 23.

According to Washington, this account with the Department is closed, and her reported monthly payment should be $0.00.[2]  *Id.* ¶¶ 9-10.

Washington alleges that she noticed the erroneous information when she obtained her Equifax credit disclosure on March 5, 2020.  *Id.* ¶ 11.  She then submitted a letter to Equifax disputing the scheduled payment, and Equifax forwarded the dispute to the Department.  *Id*. ¶¶ 12,[3] 13.  Washington alleges that she never received the Department's investigation results and the $50.00 scheduled monthly payment was still reported on her Equifax credit disclosure when she obtained her credit disclosure again on June 9, 2020.  *Id*. ¶ 17.  Washington alleges that the Department negligently and willfully failed to conduct a proper investigation as required by the FCRA.  *Id*. ¶¶ 20, 27 (citing 15 U.S.C. § 1681s-2(b)).[4]

While the facts alleged in this case are simple and straightforward, Washington's service of the Department was anything but.  Washington filed her complaint on July 22, 2020.  Doc. 1.  More than ninety days later, the Court ordered her to show cause why the claims against the Department should not be dismissed for failure to serve pursuant

---

[2] The record does not reflect whether Washington's tradeline displayed that the "account" had been paid. If it did, it is doubtful that Washington states a viable claim on the merits.  *See Marshall v. Robins Fin. Credit Union*, 2020 WL 620575, at *3 (M.D. Ga. Feb. 10, 2020); *Baker v. Pinnacle Credit Union*, 2020 WL 4696713, at *4 (N.D. Ga. Aug. 13, 2020).

[3] Perhaps because it skips paragraphs 8 and 16, Washington's complaint includes two paragraph "12s." This citation is to the first paragraph 12.

[4] After receiving notice of a dispute "with regard to the completeness or accuracy of any information provided … to a consumer reporting agency," a furnisher of information must "conduct an investigation with respect to the disputed information[,] … report the results of the investigation to the consumer reporting agency[,]" and, if the investigation results in the discovery of incorrectly reported information, remedy the reported information by modifying, deleting, or blocking the reporting of the information.  15 U.S.C. § 1681s-2(b)(1)(A),(C),(E).

to Rule 4(m).[5]  Doc. 10.  Later that day, Washington filed an affidavit showing that the Department was served on October 15, 2020.  Doc. 11.  Washington apparently believed she had properly perfected service on the Department, because she later requested entry of default.  Docs. 12; 14.  But the Clerk declined to enter default because Washington had not properly served the Department—an agency of the United States—pursuant to Rule 4.

On January 15, 2021, the Court again ordered Washington to show cause why her claims against the Department should not be dismissed for lack of service.  Doc. 16.  Specifically, the Court ordered Washington to explain her failure to serve the United States Attorney for the Middle District of Georgia pursuant to Federal Rule of Civil Procedure 4(i), which requires plaintiffs suing a United States agency to also serve the United States via the United States attorney for the district where the suit is brought and the Attorney General of the United States.  *Id*.; *see* Fed. R. Civ. P. 4(i)(1)(A)(i)-(ii), 4(i)(1)(B).  Washington responded that she had misinterpreted the Rule, and she provided evidence that she had recently sent a copy of the summons and the complaint to the United States Attorney by certified mail, thus perfecting service under Rule 4(i), albeit more than ninety days after she filed suit.  Docs. 17 at 2; 17-2.  Significantly, Washington also provided evidence that she had served the Attorney General of the United States on October 15, 2020, the same day she served the Department.  Doc. 17-1.  On February 15, 2021 Washington finally submitted proof that she served the United States Attorney for the Middle District of Georgia.  Doc. 18.

---

[5] Rule 4(m) of the Federal Rules of Civil Procedure states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).

The Department has moved to dismiss Washington's complaint. Doc. 19. The Department argues both that Washington failed to timely serve her complaint and that Washington's claims against it are barred by sovereign immunity. Doc. 19-1 at 7-16.

## II. DISCUSSION

### A. Failure to Timely Serve

Rule 4(i)(2) states that "[t]o serve a United States agency … a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency[.]" To serve the United States, a party must (1) send a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States and (2) deliver or send a copy of the summons and of the complaint by registered or certified mail to the United States Attorney for the district where the action is brought. Fed. R. Civ. P. 4(i)(1)(A)(i)-(ii), 4(i)(1)(B). A party must properly serve the United States and the agency within ninety days after the complaint is filed, and if a defendant is not timely served, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that serve be made within a specified period of time." Fed. R. Civ. P. 4(m).[6] However, Rule 4(i)(4) provides that the Court "must allow a party a reasonable time to cure its failure to … serve a person required to be served under Rule 4(i)(2), if the party has served either the United States attorney or the Attorney General of the United States." Fed. R. Civ. P. 4(i)(4)(A).

---

[6] Rule 4(m) also states that the Court must extend the time for service if a plaintiff shows good cause for the failure to timely serve. However, Washington does not attempt to show good cause for failure to timely serve; rather, as discussed, she relies on Rule 4(i)(4).

-4-

Washington timely served the Department on October 15, 2020, eighty-five days after she filed her complaint. Doc. 11. But as far as the record showed, she had not served the Attorney General of the United States or the United States Attorney for the Middle District of Georgia as required by Rule 4(i). Washington perhaps should have known that service had not been perfected when the Clerk declined her application for entry of default against the Department on January 7, 2021, but the Court removed all doubt when it entered a second show cause order on January 15, 2021 detailing the deficiencies and the requirements of Rule 4(i). Doc. 16.

Washington responded to the second show cause order and showed that she had timely served the Attorney General of the United States. Doc. 17-1. Accordingly, pursuant to Rule 4(i)(4)(A), the Court was required to allow Washington a reasonable time to cure her failure to serve the United States Attorney. Washington showed that on January 28, 2021, she sent a summons and copy of her complaint to the civil process clerk at the United States Attorney's Office for the Middle District of Georgia. Doc. 17-2. Despite her service on the United States Attorney being untimely, the Court must allow a reasonable time to cure this failure. The Court finds that Washington cured her service deficiency within a reasonable time once she became aware of what Rule 4 required. *See* Fed. R. Civ. P. (4)(i) advisory committee's note to 2000 amendment ("A reasonable time to effect service on the United States must be allowed after the failure is pointed out.").

Accordingly, the Department's motion to dismiss the complaint for untimely service is **DENIED**.

**B. Sovereign Immunity**

Washington brings claims against the Department for willful and negligent violations of the FCRA pursuant to 15 U.S.C. § 1681n and § 1681o. Doc. 1 ¶¶ 19-30. The Department argues that the FCRA does not contain a clear and unequivocal waiver of sovereign immunity, and thus, the Court lacks subject matter jurisdiction over Washington's claims.

An action may proceed in a United States district court only if federal subject matter jurisdiction exists. *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004). "Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citations omitted). On the other hand, "[f]actual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." *Id.* Here, the Department makes a facial attack. Doc. 19-1 at 6. Accordingly, the Court must "look and see if [Washington] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

The United States must consent to be sued. *Asociacion de Empleados del Area Canalera v. Panama Canal Comm'n*, 453 F.3d 1309, 1315 (11th Cir. 2006) ("*AEAC*"). Unless waived, "sovereign immunity shields the Federal Government and its agencies

from suit." *King v. United States*, 878 F.3d 1265, 1267 (11th Cir. 2018) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994)).  Moreover, such a waiver cannot be ambiguous; rather, "[w]aivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *Id.* (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)).  A court must "construe any ambiguities in a purported waiver of sovereign immunity in favor of immunity." *AEAC*, 453 F.3d at 1315 (citing *United States v. Williams*, 514 U.S. 527, 531 (1995)).

The FCRA imposes liability on "any person" who negligently or willfully fails to comply with the Act's requirements.  15 U.S.C. §§ 1681n, 1681o.  "Person" is defined in the FCRA as any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency, or other entity*."  15 U.S.C. § 1681a(b) (emphasis added).  Washington argues that Congress "waived sovereign immunity under the FCRA by defining the term 'person' to include a 'government or governmental subdivision or agency.'"  Doc. 21 at 9.  The Department argues, however, that despite the seemingly clear statutory definition of "person," the FCRA, taken in context and as a whole, does not contain an unequivocal waiver of sovereign immunity.  Doc. 19-1 at 12-16.  Both parties cite cases supporting their argument, and each notes that the other's cases are not binding authority.  Docs. 21 at 10; 24 at 2, 3 n.2.

Washington argues that "[s]everal courts have held that the United States indeed waived its sovereign immunity under the FCRA by defining the term 'person' to include a 'government or governmental subdivision or agency.'"  Doc. 21 at 9.  However, nearly all the cases cited by Washington follow one case—*Bormes v. United States*.  759 F.3d

793 (7th Cir. 2014). And nearly all those cases were decided before other circuits weighed in on the issue; now two circuits have concluded that Congress has not waived federal sovereign immunity for FCRA violations.[7] See Daniel v. Nat'l Park Serv., 891 F.3d 762 (9th Cir. 2018); Robinson v. United States Dep't of Educ., 917 F.3d 799 (4th Cir. 2019), cert den. 140 S.Ct. 1440 (2020).

In short, Bormes is the only case Washington cites that provides any meaningful analysis of whether Congress explicitly waived federal sovereign immunity in the FCRA. Bormes's relevant reasoning is terse:

> [a]ny "person" who willfully or negligently fails to comply with the Fair Credit Reporting Act is liable for damages. "Person" is a defined term: "any individual, partnership, corporation, trust, estate, cooperative, association, *government or government subdivision or agency*, or other entity." The United States is a government. One would suppose that the end of the inquiry. By authorizing monetary relief against *every* kind of government, the United States has waived its sovereign immunity. And so we conclude.

Bormes, 759 F.3d at 795 (citations omitted).

Notably, however, the Seventh Circuit seems to have shied from its holding. In Meyers v. Oneida Tribe of Indians of Wisconsin, the Seventh Circuit held that Congress had not unequivocally meant for Indian Tribes to fall under the definition of a "person." 836 F.3d 818 (7th Cir. 2016). Instead, the court stated that it would not "shoehorn" an Indian Tribe into the definition of a "person" simply because it was a "government." Instead, "[it] must be said with 'perfect confidence' that Congress intended to abrogate

---

[7] *Kent v. Trans Union*, LLC, 2017 WL 3701861, at *2 (N.D. Tex. Aug. 25, 2017) (stating *Bormes* was the only appellate court to rule on whether the FCRA waived sovereign immunity); *Ingram v. Experian Info. Solutions, Inc.*, 2017 WL 2507694, at *2 (N.D. Miss. June 9, 2017) (same); *Johnson v. Trans Union, LLC*, 2018 WL 1462109, at *2 (W.D. La. Mar. 22, 2018) (same); *Jones v. U.S. Dep't of Agric.*, 2018 WL 783335, at *2 (E.D. Mich. Feb. 7, 2018) (same); *Mooneyham v. Equifax Info. Services, LLC*, 99 F. Supp. 3d 720, 726 (W.D. Ky. 2015) (basing its finding that sovereign immunity had been waived on *Bormes* before any other circuit court ruled on the issue).

sovereign immunity[,] and 'imperfect confidence will not suffice.'" *Id.* at 827 (quoting *Dellmuth v. Muth*, 491 U.S. 223, 231 (1989)). At least one circuit court has noted *Bormes*'s suspect logic concerning FCRA sovereign immunity after *Meyers*. *Daniel*, 891 F.3d at 774 ("The same logic in *Meyers* applies with respect to the United States. The 'real question' in this sovereign immunity appeal is not whether the United States is a government; it is whether Congress explicitly waived sovereign immunity or the United States can claim immunity from suit.").

The Fourth and Ninth Circuits grappled with the 'real question'—whether, notwithstanding the FCRA's definition of person, Congress unambiguously and unequivocally waived sovereign immunity. *Robinson*, 917 F.3d 799; *Daniel*, 891 F.3d 762. The answer of both courts was "no," and this Court is persuaded by their reasoning.

First, "there is a 'longstanding interpretive presumption that "person" does not include the sovereign' … even when 'person' is elsewhere defined by statute." *Robinson*, 917 F.3d at 802 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000) and citing *Bond v. United States*, 572 U.S. 844, 861 (2014)). Second, statutes that waive sovereign immunity do so clearly and "specifically reference claims, actions, or other forms of liability against the United States directly." *Thorpe v. U.S. Dep't of Ed.*, ___ F. Supp. 3d. ___, 2021 WL 1997030, at *2 (S.D. Fla. April 27, 2021). For example,

> [a]t its core, the Little Tucker Act specifically describes claims "against the United States." [28 U.S.C. § 1346(a)(2).] The same is true of the Federal Tort Claims Act: "The United States is liable … in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Indeed the words "United States" appear in a great many waivers. *E.g.*, 12 U.S.C. § 3417(a) ("Any agency or department of the

United States … is liable to the customer…"); 42 U.S.C. § 9620(a)(1) ("Each department, agency, and instrumentality of the United States … shall be subject to … liability under section 9607."); see also 26 U.S.C. § 7433(a) (waiver describing "United States"); 46 U.S.C. § 30903(a) (same).

*Robinson*, 917 F.3d at 803. Unlike statutes expressly waiving sovereign immunity, the purported waiver in the FCRA is found in the definition of "person." And within this definition, the purported waiver does not explicitly mention the United States. *Compare* 15 U.S.C. §§ 1681n, 1681o, 1681(a)(b), *with* 33 U.S.C. § 1365(a)(1) (Clean Water Act) ("[A]ny citizen may commence a civil action on his own behalf … against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency[.])."). The point is, Congress knows how to clearly and unambiguously waive sovereign immunity when it wants, and it does not do so by tucking the waiver in a definition that doesn't explicitly mention the United States.

Indeed, Congress did clearly waive sovereign immunity in another provision of the FCRA. 15 U.S.C. § 1681u concerns disclosures made to the FBI for counterintelligence purposes. That provision contains a waiver of sovereign immunity which states that "[a]ny agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of this section is liable to the consumer to whom such consumer reports, records, or information relate[.]" 15 U.S.C. § 1681u(j). This explicit waiver in the same statutory scheme strongly suggests that Congress would not employ the meek and vague waiver Washington reads into section 1681a(b). "Such a clear contrast is powerful evidence that Congress did not intend to subject the federal fisc to suits for money damages." *Thorpe*, 2021 WL 1997030, at *2.

In sum, the Court finds persuasive the reasoning of the Ninth Circuit in *Daniel* and the Fourth Circuit in *Robinson* and follows the overwhelming majority of district court cases that have faced this issue in the last two years.[8] Accordingly, the Court finds that Congress did not clearly and unequivocally waive sovereign immunity in the FCRA. Therefore, the Department's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**.

### III. CONCLUSION

For the reasons stated above, the Department's motion to dismiss (Doc. 19) is **GRANTED**.

**SO ORDERED**, this 24th day of June, 2021.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT

---

[8] Nearly every district court that has faced this issue since the Fourth Circuit decided *Robinson* in 2019 has found that Congress did not clearly waive sovereign immunity in the FCRA. *Thorpe*, 2021 WL 1997030; *Gray v. Equifax Info. Sys, LLC*, ___ F. Supp. 3d ___, 2021 WL 1290252 (S.D. Fla. Feb. 8, 2021); *Black v. Equifax Info. Services, LLC*, 2021 WL 1246118 (N.D. Ga. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 1246117 (N.D. Ga. Mar. 23, 2021); *Marzouq v. U.S. Dep't of Educ.*, 2019 WL 2996177 (E.D. Mich. July 9, 2019); *Thurston v. Equifax Info. Services, LLC*, 2020 WL 6434854 (W.D. Tex. Nov. 2, 2020); *Golden v. Hood*, 2020 WL 7321072 (W.D. Ark. Dec. 11, 2020); *Johnson v. Trans Union, LLC*, 2019 WL 3202212 (W.D. La. July 15, 2019); *Tillery v. U.S. Dep't of Educ.*, 2019 WL 3413518 (D. Md. July 29, 2019); *Smith v. Penn. Higher Educ. Assistance Agency*, 2019 WL 3219896 (E.D. Mich. July 17, 2019); *Scott v. Synchrony Bank*, ___ F. Supp. 3d ___, 2021 WL 2021575 (W.D. N.Y. May 21, 2021); *Stein v. U.S. Dep't of Educ.*, 450 F. Supp. 3d 273 (E.D. N.Y. 2020); *Kirtz v. Trans Union, LLC*, 2021 WL 1750141 (E.D. Penn. May 4, 2021); *Ainsworth v. U.S. Dep't of Educ.*, 2019 WL 6134482 (N.D. Okla. Nov. 19, 2019); *Coleman v. Devos*, 2020 WL 9219408 (N.D. Tex. Dec. 28, 2020).

The Court is aware of only one case in the same period that did not follow the trend. *Hatch v. Equifax Info. Services, LLC*, 2021 WL 1923419 (E.D. Mich. May 13, 2021).